Curia, per
Colcock, J.
When there has been much and protracted litigation, and the cause is on the eve of a termination, and the question of jurisdiction is for the first time made, it is with great reluctance that the Court will dismiss a bill. But when the question is made at . the commencement oi the suit, and urged at all its vanous stages, the reluctance is much diminished; for under such circumstances it is the duty of the complainant thoroughly to investigate the subject, and actually to ascertain the ground on which he stands. The complainants claim as the representatives of Archer Farley their father, and at the conclusion of the bill, in a very brief manner by way of prayer, urge that if the property should be found not to have belonged to their father, then it must be considered as their grand mother’s, and in that case they would ask for distribution of it, and claim as her representatives^ Now, with the. same propriety they may have carried back their claim through two or more generations, and thus have opened an investigation of the title to this property for the last century. Nor is this all. Those through whom or under whom they claim, or may have claimed, may have been in debt, *514 and may have left other representatives beside them-geives< .Now, what, a door for endless litigation would °Pened to say, that each creditor or each representative might come into Court to claim his share of the egtate 0f an intestate. To avoid all these difficulties the law has said, that when one dies intestate administration of his estate shall be granted, and it has settled the order in which the rights of those claiming administration shall be determined.
No person, though next of kin, can sue at law or equity for the personal property of an intestate, unless he take out administration.
None but the adminis.trator or executor of' a deceased person can call upon, a third person to account for any thing due the’ deceased
If an application is made to a Court for distribution it must be through an administrator or executor. In Cooper’s Equity Pleadings, 35, it is said, that an executor before probate may file his bill, and it is sufficient if he afterwards takes out probate at any time before hearing. Yet, in a bill for an account of the personal estate of J. S. though the person who has a right to administer to J. S. is a party, that is not sufficient without administration actually taken out; and this rule is well supported by the case of Humphries v. Humphries, 3 P. Wms, 349. Colonel Lancashire gave £10,000 to his daughter, arid the same sum to his wife. The complainant married the daughter, and the defendant the widow of Colonel Lancashire. . The brother of Colonel Lancashire and his wife were left executors. Both died, and the bill was filed by the son against his father for an account of the estate of Colonel Lancashire. The complainant’s wife was of course the person entitled to administration on her father’s estate. Yet the Chancellor says, there can be no account taken of the personal estate of Colonel Lancashire without making his executor or administrator a party to the bill. For aught appears to the contrary, there may be debts due from Colonel Lancashire ■which may take up part of the assets, and therefore the administrator of the Colonel must be made a party, else no proper accpunt can be taken ; ándjif any account *515 should in fact be taken it may all be overhauled again when such administration shall be taken out.
This ground is so conclusive, that it would be unnecessary to say any more on the argument made to the jurisdiction of the Court, did we not look to the further prosecution of the case by the parties.
In support of the jurisdiction of the Court it is said, ’
1. That there is no adequate remedy at law.
2. That the defendant ought to be considered as executor de son tort, and consequently accountable in the Court of Equity. And
3. That this is a bill for a specific performance.
It is urged, that the remedy at law would not be complete, because the bond given for the delivery of the property is in the penalty of only £2,000 currency, which would not cover the value of the property; and that an action of trover or detinue would only eventuate in damages ; and that in the mean time the property might be carried off, and the complainants have to look to an insolvent person for the damages.
As to the bond. Upon an examination of it, it appears to be given for £2,000 Virginia money, by Mary Farley alone, to Archer Farley. Whether that sum would be sufficient to cover the value of the property or not is not an important inquiry, for no suit can be maintained on that bond against the defendant or. any other person. Mary Farley alone was bound, and the obligation died with her.
The action of trover has been used for many years, and although in some instances it may not have proved an effectual remedy, it is believed, that it may have proceeded in a great measure from the negligence of those who have used it. It does not enable one to recover the specific article, nor indeed will an action of detinue always effect the object. Yet the same may be said of a bill in chancery, unless process be obtained to restrain *516 the party in possession from removing it without the jurisdiction of the Court. And when an action at law is brought an order for bail may be obtainedand perhaps if this did not afford sufficient security, upon a proper case being made out, the auxiliary aid of the Court of Equity might be obtained. But in ordinary cases, and in this case for aught that appears to the Court, the remedy by an action of trover would be as adequate as it unquestionably is the plain remedy to which the complainants, after administering, should have resorted. Under this head of the argument it was urged, that even where there is a remedy at law, if it be difficult, equity will maintain jurisdiction ; and this, as a general position, is admitted, though the cases which come within it are of rare occurrence and peculiar character. The case before us, however, appears, not only from the circumstances of its having been sent to law, but from all its circumstances, to be one which can be better investigated in a Court of Law than by a Court of Equity.
Where a parly can have complete remedy by an action of detinue or trover for personal property such as slaves, and equity will not entertain jurisdiction, to obtain its aid the complainant must make out a case proper for its interposition.
The defendant, making himself executor de son tort, will not give jurisdiction, where there is remedy at law.
It seems, in ■ some particular cases, equity has decreed specific performance of agreements in relation to personal property; but never against one not a party or privy to such agreement.
On the second ground, that the defendant was executor de son tort. If he had been guilty of such intermed-ling as would .have made him an executor de son tort, its effect would have been to give a common law jurisdiction, for a trespass would certainly not be the foundation of equity jurisdiction. I am aware, however, that there are many cases where a Court of Equity will proceed against one who has intermeddled, although he is not a legal representative; but it must be in a case where there is no remedy at law.
On the third ground that this is a bill for specific performance. It is granted that the Court of Equity have decreed the specific performance of an agreement which related to personal property; as in the cases cited in 1 Mad. Cha. Rep. 403. Buxton v. Lister, 3 Atk. 384. But never against one who was not a party to the agreement or a legal representátive of such party. And *517 it is also admitted that it seems to constitute a very peculiar part of equity jurisdiction, in some cases of anomalous character, to decree the delivery of a specific article. But so rare are those cases that I have been able to find but four ; and the case before us could not by the most strained conceit be brought within the rule of those cases. They are for the recovery of articles which, from some peculiar causes, are held in such estimation by the owners, that no damages which could be obtained from a jury would be an adequate compensation for the loss of them; as in the case of Fells v. Read, 3 Ves. 70, which was for a silver tobacco box, inclosed in two large silver cases, adorned with engravings, belonging to a society, and used in a particular manner or on particular occasions by them, in which case the Chancellor speaks of the Pusey horn, and patera of the Duke of Somerset, as articles of like character; or, as in the case of Lloyd v. Laring, which was a bill to recover the jewels and dresses, &c. of a chapter of freemasons, 6 Ves. 773; or the case of Lowther v. Lowther, 13 Ves. 95, for a picture of Titian's, worth £5000, for which an ordinary jury could not perhaps have been induced to give as many pence.
In some cases' of a peculiar character equity will decree a delivery of a specific chattel.
If a hill for discovery, it must be distinctly, so, and call for something which is not in the complainant’s power to set out in his bill.'
Where the complainant calls for a discovery of certain slaves, naming them, and their increase, if defendant answers that there are none but such whose names the bill mentions, the Court will send complainant to law.
And lastly, the complainants’ counsel contend that the bill should not be dismissed for want of jurisdiction, because where the Court has obtained jurisdiction on one ground, it will retain it for all other purposes, and that this is a bill for discovery and for an account of Mary Farley's property. If it be a bill of discovery the object has been very irregularly and unskilfully pursued; for I can observe no fact, which the defendant is called on to discover, which is not stated in the bill. As to the negroes, their names are stated in the bill, and the defendant answers, correctly stated, and on all other facts of importance he denies any knowledge. If the doctrine as laid down be correct, I can not see how it can *518 apply as to the estate of Mary Farley; for it is riot directly charged in the bill that she had any, and that which they suppose may turn out to be hers they have proved to have been Archer Farley’s. If it is meant that by charging a possible liability a bill may be sustained, it is carrying the doctrine farther than the reason of the rule could have intended', and farther than this Court can be induced to go. In the case of Rees v. Parish, (ante, p. 56) decided April 1825, the opinion of the Court was expressed on this point, and the defendant having denied that there were any issue of the slaves in a bill for discovery on that point, the bill was dismissed. Upon the whole the Court are of opinion that the motion must prevail and the bill in this case be also dismissed.

Bill dismissed.